### JAMES R. GAULTNEY et al. *v.* PEARCE NOLAN.

1. EXECUTOR AND ADMINISTRATOR: RIGHTS AND LIABILITIES WHERE THERE ARE MORE THAN ONE.—Where there are two or more executors, each has a several right to the assets of the estate, and is solely responsible for what he receives.
2. SAME.—An executor is not responsible for a devastavit committed by his co-executor, unless he consented to the waste, or negligently omitted to make any effort to prevent it.
3. SAME: EFFECT OF RENDERING JOINT ACCOUNT.—The rendition of an annual account, jointly by two executors, is prima facie sufficient to charge both, for the assets embraced in it; but either may be exonerated from liability, by showing that no assets came to his hands, and that the estate was solely administered by the other.

APPEAL from the Probate Court of Adams county. Hon. P. Bullock, judge.

In 1845, the appellants, who were legatees under the last will and testament of A. Gaultney deceased, filed their petition in the court below, against Pearce Nolan, the surviving executor of said Gaultney, praying that he be required to render a final account. Nolan answered, denying that he had any assets of said testator in his hands, and also denying, that he had ever acted as executor, or received any of the assets of the estate, except his wife's distribu-

tive share therein, and alleging, that one Joseph Gaultney, now deceased, had received and managed the assets of said estate, and had made distribution of them. He further answered, that he did not know whether said Joseph had made a final settlement or not.

The Probate Court, upon the coming in of the answer, decreed, that Nolan should render a final account of his acts as executor. From this order, Nolan appealed to this court, where the decree of the court below was affirmed, and the cause remanded to be proceeded with in this court. See *Noland* v. *Calvit,* 12 S. & M. 273.

When the cause was remanded to the Probate Court, Nolan filed his final account, in which he debited himself with the original inventory returned into court, and credited himself with the property therein embraced, as having been distributed among the legatees. The account recites, that the property in the inventory had been received and managed, solely by Joseph Gaultney, and also distributed by him.

Nolan, at the same time, filed a petition, making all the legatees parties, asking for citation against them, and that his final account be allowed, and for a discharge.

Several of the legatees filed exceptions to this account, some of which had reference to transactions in the administration of the estate, which took place subsequent to the rendition and allowance of the annual account of 1827, and some had reference to matters embraced in that account.

It appeared in evidence, that A. Gaultney died in 1824, and appointed the appellee, who was his son-in-law, and the said Joseph (his son), executors of his will, by the provisions of which, the property was to be kept together for a certain period of time, for the support of the testator's widow and children; that an appraised list of the property was returned into court; and that, in 1827, an annual account, in the names of Joseph Gaultney and Pearce Nolan, executors, &c., was also returned into court, and allowed, and recorded. This account was sworn to by Joseph Gaultney; the appellee signed a written statement on this account, to the effect that he had examined the account, and believed it to be correct, and that he, "as one of the heirs in right of his wife, was satisfied" with it.

It also appeared that a notice of the intention of the executors to present the account, and to which both of their names were sub-

scribed, had been published in a newspaper printed in the county. The order of the Probate Court allowing the account, recited that it was "the first account of Joseph Gaultney, acting executor of the last will and testament of Abram Gaultney, deceased."

It was further shown, that the farm belonging to the testator was carried on under the supervision and control of the said Joseph, and the vouchers, which were excepted to, showed that the matters to which they related were transacted by said Joseph. No testimony was offered, independent of the above, to show that appellee took any part in the administration of the estate. It did not appear from the record whether the executors had executed a joint bond, or whether they executed several bonds for their administration.

In 1839, Joseph Gaultney rendered another annual account, and died about the year 1840.

The probate judge sustained some of the exceptions which related to the account of 1827, and overruled all which had reference to matters which had transpired since that time, upon the ground, "that Noland was not liable as executor after and beyond the account of 1827."

From this decree the exceptors appealed.

*R. North & J. Hewett*, for appellants.

*G. M. Davis*, for appellee.

SMITH, C. J., delivered the opinion of the court.

The plaintiffs in error, legatees of Abram Gaultney, deceased, filed their petition in the Court of Probates of Adams county, against Pearce Nolan, as the surviving executor of said decedent, for an order on him to render an account and settlement of the estate. Nolan answered, that letters testamentary on the deceased's estate were taken out by himself and Joseph Gaultney; but that no part whatever of the testator's estate ever came into his hands or possession, except the portion received by him upon the distribution of the estate; and that he never acted as the executor. On the contrary, that said Joseph Gaultney received into his possession the entire estate of the testator, and proceeded to act as the sole executor; and that he continued so to act up to the time of his death. That said Gaultney from time to time, in due form presented to the court a full and fair account of his executorship;

that the estate had been duly divided and delivered over to the legatees ; but that he did not know whether said Gaultney had ever settled or rendered a final account of his executorship. Whereupon an order was made that Nolan should "render a final account of his actings and doings as executor as aforesaid." An appeal was prosecuted from that order, and a judgment of affirmance was entered in this court, and the cause remanded.

When this cause was before us on that occasion, it was said that " in the present attitude of this case we can see no objection to this order.  The allegation in the answer, that the defendant never had any portion of the estate in his hands, would not preclude the petitioners from proof to the contrary.  That is the very matter, in part at least, to be tried, and the court could not in advance decide it in favor of the executor."

" The liability of an executor for the acts of his co-executors is always dependent upon circumstances.  This court cannot undertake, in the absence of facts, and upon a merely conjectural state of the case, to lay down rules to govern the action of the court below. If, in taking the account, the facts give rise to the questions, which have here been argued, they can then be brought up for determination.  They are not now presented, because no such questions arose or were determined in the court below."  12 S. & M. 275.

From this language it is manifest that the record then before this court, did not contain the proofs, if any were adduced, upon which the court below based the order upon Nolan to render a final account of his executorial acts.  It is hence clear that the question of his liability to account as one of the executors of Abram Gaultney's will, was not determined.  That question was dependent upon, and was left to be determined by the facts, which in the course of the proceedings, might thereafter be developed.

When the cause was remanded, Nolan filed in the Court of Probates what purported to be a final account of his administration, accompanied by a petition praying an allowance of the same. The petitioners filed numerous exceptions, which it is unnecessary to notice in detail.  Upon a consideration of these exceptions, with reference to the evidence adduced by the respective parties, it was held that Nolan was not liable " as executor, after and beyond the account of 1827," not having, subsequent to that date, participated

in the administration of the estate; but that he was responsible, in his executorial character, for the administration of the estate prior to that time. The exceptions directed to the alleged acts of commission and omission of Nolan and his co-executor, occurring subsequent to that date, were consequently overruled; but those which pointed to the account of 1827, or some of them, were sustained, and together with the account filed by Nolan, were referred to a commissioner to restate the account, and to report the same with the evidence upon which he acted.

Upon this order, the question, which we have seen is an open one, arises, whether Nolan should have been held accountable either upon the ground that he had taken possession of the testator's estate, and had proceeded to act as the executor, or that he was responsible, having assented to the acts of his co-executor.

A point was made, that the evidence on which it is assumed the court proceeded, and by which alone the propriety of the order can be tested, was not placed in the record, in a way in which it can be noticed. But passing that objection, we will inquire whether the proofs, as they are there presented, justified the action of the court.

The facts relied on as fixing Nolan's liability are, that he qualified as executor; that the account presented in 1827 purports on its face to be the joint account of himself and the co-executor, and that he certified to the correctness of that account.

These facts, prima facie, are sufficient to establish Nolan's liability to the extent held by the court. And if unexplained or unrebutted would, perhaps, prevail against the allegation of the answer, that he never received any portion of the estate, and never acted as the executor. But on the other side, it appears that Nolan returned no inventory of any part of the estate, acting separately or jointly with the co-executor; that he did not sanction or adopt the appraisement returned and filed by the appraisers; and there is no proof whatever that he ever had possession of any of the property of the estate, or that he performed any act in virtue of his executorial authority, with the exception of his alleged agency in rendering the account before referred to. It appears further, that the co-executor, in January, 1824, took possession of

the whole estate, real and personal, and managed it, under the directions of the will, acting in all cases as the sole executor.

Where there are two executors, each has a several right to receive the debts due to the estate, and all other assets which shall come to his hands, and hence he is solely responsible for the assets which he receives.   Story's Eq. Jur., section 1280 (sixth edition).

Apart therefore from the fact, that the account of 1827 was made out in the names of both the executors, there is no ground for charging Nolan for an alleged devastavit, or any misapplication of the assets which came into his own hands.   And we do not think, under the circumstances, that it was sufficient to warrant the presumption that he had received assets, or that he had participated in the administration of the estate.   For upon an examination of the account, and the vouchers connected with the items to which exceptions were taken, it is seen that the subject-matter of the account, are transactions in which Gaultney acted as sole executor. The very fact that Nolan certified to the correctness of that account, and the terms of his certificate, show that it was not prepared or rendered by himself.

It follows therefore that if Nolan was responsible for any alleged waste or misapplication of the assets by his co-executor, it was upon the ground that they were misapplied or wasted with his consent, or with his knowledge, and without any effort on his part to prevent it.   *Clark* v. *Clark*, 8 Paige R. 152.

In reference to this point, the evidence was wholly insufficient to establish the liability of Nolan, arising from his knowledge of, or assent to, the alleged illegal acts of his co-executor.

According to this view of the subject, the order upon Nolan to account should have been discharged, and the petition dismissed. But the error committed was to the prejudice of the defendant in error, who does not seek a reversal of the decree, which must therefore be affirmed.   As this would be the result, whatever might be our opinion in regard to the decree overruling the exceptions taken to the auditor's report, it becomes unnecessary to examine any other question raised in the argument.