Isaac Ames, judge of probate, *vs.* David Armstrong
& another.

Executors who, at the request of the testator, are exempt from giving sureties on their bond, but have joined in a joint and several bond, conditioned that they shall return an inventory and administer according to law, are liable for each other's acts, as to all assets which have been included in the inventory and come into their joint possession.

Contract in the name of the judge of probate for the county of Suffolk, on behalf of the devisees and legatees under the will of Daniel Pitman, against David Armstrong and John Turner, as executors of said will, on the bond, dated May 29, 1865, given by them to the plaintiff, by which they bound themselves jointly and severally, and which was conditioned that they should,

Ames *v.* Armstrong.

" First, make and return to the probate court for said county of Suffolk, within three months from their appointment, a true inventory of all the real estate and all the goods, chattels, rights and credits of said testator which are by law to be administered, and which shall have come to their possession or knowledge; Second, administer according to law and the will of said testator all his goods, chattels, rights and credits, and the proceeds of all his real estate that may be sold for the payment of his debts or legacies, which shall come to the possession of said executors, or of any other person for them ; and Third, render upon oath a just and true account of their administration within one year, and at any other times when required by said court. Writ dated August 4, 1868. Turner alone appeared and defended.

Trial in this court, without a jury, before the chief justice, who reported this case for the determination of the full court :

Daniel Pitman, in his will, named the defendants " sole executors of this my last will and testament, and I do hereby direct that the judge of probate shall not require any sureties of them either as trustees or executors, reposing full faith in their integrity and sound judgment ; " and the decree appointing the executors exempted them from giving sureties on their bond. They duly returned an inventory, the bonds and securities named in which were placed by them in a box and deposited in a bank in Boston, and for a time the income was duly paid by them to the persons entitled thereto under the will. Until January 1867 the coupons upon the largest of the bonds were detached by the defendants in the presence of each other, and sold, and the proceeds deposited in the bank and subsequently drawn by joint checks and paid to said persons. In May 1867 Turner, in the absence of Armstrong, made the usual semi-annual payment to the heirs by checks signed by himself and Armstrong. Fifteen shares of bank stock were sold in November 1867, and transferred by the defendants jointly, and a part of the proceeds were borrowed by Turner. Joint checks were always used in drawing money from the bank, the last being dated February 4, 1868.

Turner contended that all the money, except what he thus borrowed, was duly expended in the process of settling the estate,

and by payment to parties interested ; and also contended that a large part of the securities included in the inventory were taken from the bank and fraudulently appropriated by Armstrong; and that Armstrong had absconded and left the Commonwealth. The plaintiff contended that Turner was bound to account for the whole inventory, including the property so appropriated by Armstrong. And the question was reserved for the consideration of the full court, by the consent of the parties, by whom it was also agreed that the case should be sent to an assessor to determine, if necessary, the amount for which execution should issue upon such principles as might be decided to apply to the facts.

*N. Morse & C. Wheeler*, for the plaintiff, besides the cases cited in the opinion, referred to *Pistor* v. *Dunbar*, 1 Anstr. 107 ; *Shipbrook* v. *Hinchinbrook*, 11 Ves. 252 ; *Lincoln* v. *Wright*, 4 Beav. 427 ; *Leigh* v. *Barry*, 3 Atk. 583 ; *Stowe* v. *Bowen*, 99 Mass. 194, 197 ; *Loring* v. *Kendall*, 1 Gray, 305, 316 ; *Babcock* v. *Hubbard*, 2 Conn. 536 ; *Clarke* v. *State*, 6 Gill & Johns. 288 ; *Ringgold* v. *Ringgold*, 1 Har. & Gill, 11 ; Toller on Executors, 430 ; 2 Williams on Executors, 1650 ; 2 Lomax on Executors, 297 ; 2 Steph. N. P. 1865.

*S. B. Ives, Jr., & H. M. Rogers*, for Turner. At common law Turner would not be liable for the malfeasance of Armstrong, except so far as it could be shown that he had concurred therein. *Sutherland* v. *Brush*, 7 Johns. Ch. 17. *Hargthorpe* v. *Milforth*, Cro. Eliz. 318. *Peter* v. *Beverly*, 10 Pet. 532, 562. The testator requested that no sureties should be required, and none were required by the judge of probate. The joint character of the interest of the executors arises entirely from the will, not from their qualifying by giving bond. The joining of the executors in a fiduciary relation by the testator did not make one of them responsible for the fraudulent acts of the other; and the manner of qualifying for executor, by joining two principals in the same bond, could not enlarge this responsibility. The doctrine held in some states, that executors, by the execution of a joint bond, become sureties for each other, is not law in this Commonwealth. *Towne* v. *Ammidown*, 20 Pick. 535, 541. *Brazer* v. *Clark*, 5 Pick. 96, 104.

AMES, J. Coexecutors, even though numerous, are regarded in law as but one person. The acts of one, within the scope of his authority, in the administration of the estate, are the acts of all, with this qualification, that at common law each was responsible only for such assets as came to his own hands. Under ordinary circumstances, one of two or more executors was not to be held accountable for waste or other misconduct on the part of an associate. The misplaced confidence of the testator in the integrity or capacity of one of the number was not allowed to operate to the prejudice of another. But even according to the common law, whenever any part of the estate, by any act or agreement of one executor, passes or is intrusted to the custody of a coexecutor, they are thereby rendered jointly responsible. In such a case it would be inferred that there had been a joint possession or custody, and that one executor, having power and opportunity to make it secure, had yielded the control to the other. In *Langford* v. *Gascoyne*, 11 Ves. 333, Lord Eldon held two executors jointly responsible for assets, consisting of gold in a bag, which had been delivered to one of them, and by him, immediately and without counting, handed to the other, by whom it was subsequently squandered or embezzled. *Gill* v. *Attorney General*, Hardr. 314. *Sadler* v. *Hobbs*, 2 Bro. Ch. 114. *Chasse* v. *Smith*, 7 East, 246, 256. *Hovey* v. *Blakeman*, 4 Ves. 596. *Brice* v. *Stokes*, 11 Ves. 319. *Monell* v. *Monell*, 5 Johns. Ch. 283, 296. *Sterrett's appeal*, 2 Penn. 419. *Edmonds* v. *Crenshaw*, 14 Pet. 166.

Whether, upon the facts set forth in the report, such a case of joint possession is presented as to render Turner liable at common law for the fraud and embezzlement committed by his associate, is a question which it is hardly necessary to decide, as the whole case turns upon the effect of the bond given by the two. At common law no bond was required of an executor, but his office was considered as a personal trust, resting in the confidence of the testator in the qualities which led to his selection for that special duty. By the terms of the will, these executors were not required to furnish sureties upon the assumption of their trust. They however gave a bond, according to the requirements of the

Gen. Sts. *c.* 93, § 2, and we find it impossible to avoid considering that bond as binding equally on both, and making each of them liable for its entire fulfilment, at least as to all assets included in their inventory and which have come into their joint possession. It purports to be their joint and several bond. It provides that they shall return an inventory ; that they shall administer according to law and the will of the testator; and that they shall render an account. They were not required by law to enter into a joint obligation. Each might have filed a separate bond. But having united in a joint bond, its effect is to make them both liable to the judge of probate as the trustee for creditors and others interested in the estate, to the extent of the assets which came to their joint possession. The authorities are clear that under such a bond, whatever may have been their common law rights, they are jointly responsible during the continuance of the joint executorship. *Brazer* v. *Clark,* 5 Pick. 96. *Newcomb* v. *Williams,* 9 Met. 525. *Towne* v. *Ammidown,* 20 Pick. 535. *Boyd* v. *Boyd,* 1 Watts, 365. *Sparhawk* v. *Buell,* 9 Verm. 41.

According to the agreement, an assessor is to be appointed to determine the amount for which execution is to issue against the defendants jointly, in compliance with this decision.

*Ordered accordingly.*