John W. McKim, Judge of Probate, vs. Anton Aulbach
& others.

Suffolk. Nov. 11, 1879. — March 4, 1881. Morton, Soule & Field, JJ.,
absent.

An executor who gives a separate bond is not liable for a loss caused, without negligence on his part, by the default of his co-executor.

A joint receipt, or a joint release of a mortgage, signed by two executors, is only *prima facie* evidence that the money derived therefrom came into the possession or under the control of both, and this presumption may be rebutted by proof that the money was in fact received by one, and that the other joined only as matter of form.

Colt, J. The defendant is sued upon a probate bond, given by him as one of two executors. A judgment having been ordered for the penalty of the bond, the question before us is how much of the penalty is due in equity and good conscience, for which an execution should be awarded. Several breaches of the bond are assigned. Upon two of these, namely, the failure to file an inventory, and the failure to render an account within a year, the defendant is liable for nominal damages.

The principal question arises on an alleged breach by the defendant, in negligently permitting his co-executor Wellbrock to appropriate the personal estate of the testator to his own use, whereby it was lost. The bonds given by the two executors were several and not joint, and neither is liable for losses caused exclusively by the default of the other. In order to charge the defendant, the burden is on the plaintiff to show that, in the administration of the estate, the defendant was negligent in the performance of some duty which the law devolves upon him personally. *Austin* v. *Moore*, 7 Met. 116, 124.

A mortgage due to the testator, in the State of Ohio, which by his will the executors were authorized to collect and invest as they might judge to be for the interest of the estate, was collected upon a joint release and discharge, signed by both executors, which was forwarded to the mortgagor through an express company. The money when returned by the express company was received by the co-executor Wellbrock without the defendants' knowledge, and deposited by him in a savings bank in good standing, partly in his own name and partly in his name as

trustee. He afterwards took the money from the bank without the knowledge of the defendant, and it was lost to the estate by his misappropriation of it. It is sought to charge the defendant for the loss of this money.

The report finds that Wellbrock had almost exclusive management of the estate; that he was a neighbor and friend of the testator, and had relations more intimate than the defendant with parties interested under the will; and that the defendant was not familiar with laws and forms of business, or with the English language, and was content to leave the business in the hands of his co-executor. It appears that the defendant accounted for all the estate which actually came into his individual possession. In their first account, which was filed, assented to by the parties in interest, and allowed, after the mortgage was collected, the executors charged themselves with the amount paid thereon; and in a few days after it was allowed, the defendant resigned his trust. Two other accounts were afterwards filed by Wellbrock, the remaining executor, which were assented to by the parties in interest, by which he charged himself with the amount collected on the Ohio mortgage.

It was the right of each executor to receive and hold the funds of the estate. *Edmonds* v. *Crenshaw*, 14 Pet. 166. Neither can be held responsible for the waste or misconduct of the other, unless there be some act or agreement, on the part of the one sought to be charged, by which the estate has gone into, or has been negligently suffered to remain in, the exclusive possession and control of the one by whose misconduct the loss occurs. Thus both were held liable in a case where money was delivered to one executor, and immediately handed over to the other, who appropriated it to his own use. *Langford* v. *Gascoyne*, 11 Ves. 333. But an executor is not held any farther than he is shown to have participated in the misappropriation. " Merely permitting his co-executor to possess the assets, without going farther and concurring in the application of them, does not render him answerable for the receipts of his co-executor. Each executor is liable only for his own acts, and what he receives and applies, unless he joins in the direction and misapplication of the assets." *Peter* v. *Beverly*, 10 Pet. 532, 562. *Brazer* v. *Clark*, 5 Pick. 96, 104. *Sterrett's appeal*, 2 Penn. 419.

It is contended that the defendant is liable in this case, because he must be treated as having concurred in the wrong, by joining in the release by which his co-executor was enabled to obtain possession of the money due on the mortgage and to mingle it with his own property. The rules which govern the liability of co-executors follow in most respects the rules which prevail as to co-trustees. But, while the latter are not liable for the money which they have not received, although they join in receipts given for the same, it was at one time held that the former were liable in such cases. The reason given for this distinction was that co-executors, unlike co-trustees, have each an independent power over the personal property of the testator, and may dispose of it, receive, pay and give receipts in their own names, and therefore, that, if one joins with his co-executor in giving a receipt, he does an unmeaning act, unless he intends to render himself jointly answerable for the money. But this rule, which does not seem to have been maintained with entire uniformity, is declared in Williams on Executors (6th Am. ed.) 1938, to have been greatly relaxed in favor of executors; and Lord Eldon, in *Shipbrook* v. *Hinchinbrook*, 16 Ves. 478, declares it to have been broken down.

In *Joy* v. *Campbell*, 1 Sch. & Lef. 328, 341, Lord Redesdale states the distinction thus: "If a receipt be given for the mere purposes of form, then the signing will not charge the person not receiving." "The true question in all those cases seems to have been, whether the money was under the control of both executors. If it was so considered by the person paying the money, then the joining in the receipt by the executor who did not actually receive it, amounted to a direction to pay his co-executor;" "he became responsible for the application of the money just as if he had received it." In *Hovey* v. *Blakeman*, 4 Ves. 596, 608, Lord Alvanley, the Master of the Rolls, referring to the earlier rule, declared that he would not consider the fact that an executor joins in the receipt as absolutely conclusive; and, in *Scurfield* v. *Howes*, 3 Bro. Ch. 91, he stated his dissent from the rule, when an executor joins in signing a receipt, if it appears that he joined for conformity only. In *M'Nair's appeal*, 4 Rawle, 148, 157, the Supreme Court of Pennsylvania declares that "there is no good reason for making executors or

administrators liable more than trustees for moneys which they have never actually received, merely because they have joined in a receipt with the co-executor or co-administrator who did receive it. The receipt when proved must always be considered *prima facie* evidence against each of the signers that he received the money; and if he wishes to avoid the consequent liability, it will lie upon him to prove that it was not received by him." The weight of modern authority, both English and American, is that a joint receipt is only presumptive evidence that the money came into the possession or under the control of both. *Monell* v. *Monell*, 5 Johns. Ch. 283. And this presumption may be rebutted by proof that the money was in fact received by one, and that the other joined only as matter of form and for the sake of conformity. See also *Manahan* v. *Gibbons*, 19 Johns. 427. *Ochiltree* v. *Wright*, 1 Dev. & Bat. Eq. 336. Perry on Trusts, §§ 421–426.

It is further contended that, even if the defendant cannot be charged upon the ground of his having joined in the release of the mortgage, and having allowed the money due thereon to be collected and deposited by Wellbrock alone, yet that the finding of the master in favor of the plaintiff is supported by the facts stated in the report, that, in April 1873, within a month after Wellbrock received and deposited the money, and before the greater part of it had been drawn out again by him, "either the defendant was warned and put on his guard, as testified to by one of the parties in interest, or his suspicions were aroused;" and that "since that, whereas before that time receipts for rent had been given in the name of Wellbrock alone, he insisted that thereafter they should be signed by both of the executors."

But this statement of the master is too meagre and ambiguous to enable us to come to a satisfactory conclusion on this branch of the case; and, for the purpose of a fuller and clearer ascertaining and statement of the facts and circumstances relied on to charge the defendant by reason of negligence and breach of duty on his part since the original receipt and deposit of the money by Wellbrock, the case must be

*Recommitted to the master.*

*J. G. Abbott*, (*B. Dean* with him,) for the plaintiff, cited some of the authorities referred to in the opinion, and *Brice* v. *Stokes*,

11 '/· s. 319; *Sadler* v. *Hobbs,* 2 Bro. Ch. 114; *Williams* v. *Nixor.,* 2 Beav. 472; *Crosse* v. *Smith,* 7 East, 246; *Moses* v. *Levi,* 3 Y. & C. Exch. 359; *Clark* v. *Clark,* 8 Paige, 152; *Ames* v. *Armstrong,* 106 Mass. 15.

*A. Russ & D. A. Dorr,* for the defendant, further cited *Doyle* v. *Blake,* 2 Sch. & Lef. 230; *Westley* v. *Clarke,* 1 Eden, 357, and 1 P. Wms. 83; *Churchill* v. *Hobson,* 1 P. Wms. 241; *Walker* v. *Symonds,* 3 Swanst. 1, 64; *Knight* v. *Plymouth,* 1 Dickens, 120; *Bacon* v. *Bacon,* 5 Ves. 331; *Powell* v. *Evans,* 5 Ves. 839, 843; *Towne* v. *Ammidown,* 20 Pick. 535; *Abbott* v. *Fisher,* 124 Mass. 414; *Gaultney* v. *Nolan,* 33 Miss. 569; *Williams* v. *Maitland,* 1 Ired. Eq. 92, 106; *Perry* v. *Maxwell,* 2 Dev. Eq. 488; *Whitted* v. *Webb,* 2 Dev. & Bat. Eq. 442; *Doud* v. *Sanders,* Harp. Eq. 277; *Thompson* v. *Brown,* 4 Johns. Ch. 619, 628.